[Crim. No. 23476. Second Dist., Div. Four. Feb. 22, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
GRANT FRANK YARBROUGH, Defendant and Appellant.

456

**COUNSEL**

Grant Frank Yarbrough, in pro. per., and Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

KINGSLEY, J.—Defendant was charged with murder, in violation of section 187 of the Penal Code. After a trial by jury, he was found guilty of voluntary manslaughter, a lesser and necessarily included offense. He was sentenced to state prison; he has appealed; we affirm.

The evidence for the People, if properly admitted and believed, amply supports the jury's verdict. Accordingly, we summarize it only insofar as is necessary to understand the procedural issues raised on this appeal.

The victim, who was living with defendant, died from multiple blows to the head, inflicted by a blunt instrument. It was the theory of the prosecution, obviously accepted by the jury, that those blows were struck by defendant during a quarrel. Defendant denied quarreling with the victim or striking her on the occasion involved. He offered no explanation for the kind of blow that caused death.

### I

■ A substantial part of the prosecution's case consisted of the testimony of the victim's seven-year-old daughter, who was present in the motel room in which the alleged altercation occurred. Defense counsel argues that it was error to admit her testimony because she did not understand the difference between right and wrong or understand the meaning of the word "oath." However, the record discloses an extensive *voir dire*, during which it became clear that the girl did understand that she should not lie and that she would be punished if she did lie. We cannot say that the experienced trial judge erred in admitting the testimony of the girl.

### II

■ The court instructed the jury on the degrees of murder, on voluntary manslaughter and on involuntary manslaughter resulting from an assault. No objection is made to those instructions. It is argued that the court should also, *sua sponte,* have instructed on involuntary manslaughter resulting from a lawful act. We do not agree. Defendant denied striking the fatal blows; nothing in the record showed any "lawful" conduct on his part that had had any causative effect on the death. There was no need to instruct on a hypothetical situation that was not advanced by either prosecution or defense.

### III

■ The motel manager testified to a conversation with defendant in which defendant inferentially admitted striking the victim. Another tenant

of the motel testified that she had heard significant parts of that conversation. On cross-examination, that witness stated that she could not say that she had heard "every word" of the conversation. We see no error. This is not a case, such as *People* v. *Rabalete* (1938) 28 Cal.App.2d 480 [82 P.2d 707], on which defendant relies. In *Rabalete* it was admitted that substantial portions of a conversation had not been heard by the witness. In the case at bench we have no more than a witness so honest that, although she testified that she believed she had heard the entire conversation involved, she was not willing to affirm the possibility that no word might have been unheard. The trial court exercised a proper discretion in evaluating the witness' competency to testify to the conversation as recounted by her.

## IV

■ An investigating police officer testified that, when he came to the motel in response to a call for the "rescue wagon" defendant said: "I called the police. You aren't going to arrest me for 187, are you?" Defendant testified, denying use of the number but admitting he knew its significance, explaining that he had "been in jails where many different codes are used, and we always referred to charges by their names."

(1) Since the defense theory at the trial was that defendant had not struck the fatal blows, the voluntary reference to a potential murder charge, as testified to by the officer, and made prior to any suggestion by the officer as to the cause of death, was a statement from which the jury could infer that defendant realized that he might have committed murder. As such it was properly admitted.

(2) It was defendant who, in attempted avoidance of that inference, introduced his past "jail" record. He cannot complain.

## V

■ The People, on cross-examination, asked defendant about previous occasions on which he was alleged to have struck the victim. It is clear from the record that those questions were asked in good faith. In a case where defendant denied any beating at all, it was not improper for the trial court to admit evidence which went to show prior beatings of the same person. (Evid. Code, § 1101, subd. (b); *People* v. *Small* (1970) 7 Cal. App.3d 347, 355 [86 Cal.Rptr. 478].)

## VI

■ Originally, defendant was represented by the public defender. Prior to trial, at his request, private counsel was substituted. During the trial,

defendant sought to discharge that attorney on the ground that he had been procured for him, and was being paid, by the father (or grandfather) of the child witness and on the ground of inadequate consultation. The request was denied.

(1) Defendant admittedly knew from the beginning of the retainer of the relation between his attorney and the child's relative and admitted a long and friendly prior acquaintanceship with that attorney. He was in no position to raise that relationship in mid-trial.

■ (2) The record shows that the attorney conducted the defense in a competent manner and gave defendant a thoroughly professional representation. We cannot, on appeal, undertake to second-guess the attorney's trial strategy in calling or not calling particular witnesses or in making or not making particular objections.

## VII

■ It was part of defendant's case that the victim was heavily intoxicated on the occasion involved. The pathologist who had performed the autopsy testified that he found no trace of alcohol or drugs in the victim's blood. In mid-trial, defendant asked the court to appoint another toxicologist to examine the body in the hope that that expert would report findings consistent with defendant's position. Defense counsel, although making the request at the urging of defendant, stated that, in his opinion, it would not be useful. We cannot say that counsel thereby gave inadequate representation or that the trial court abused its discretion by denying defendant's motion. Whether the victim was drunk or sober was of little materiality on the issue of whether defendant, in fact, acted as the prosecution contended or whether he acted with the requisite intent.

## VIII

■ In pronouncing sentence, the trial judge said: "The defendant is to have 148 days credit for time served." The formal judgment reads (as to that matter): "Defendant has been held in custody for 148 days as a result of the same criminal act or acts for which he has been convicted."

It is argued that the judgment should be modified to read in the language used by the court. We disagree. Under section 2900.5 of the Penal Code it is for the Adult Authority and not the trial court, to grant the "credit" therein provided. It is administratively convenient for the judgment to contain the data necessary for the authority to perform its statutory duty, so that the authority need not engage in its own search of the

trial court records. But, if the judgment contains a statement adequate for the purpose, it is not material that it do so in any particular words.

The judgment is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1974.